Filed 7/19/21  In re D.R. CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re D.R., a Person Coming Under the Juvenile Court Law. | C091701 |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>D.R.,<br><br>Defendant and Appellant. | (Super. Ct. No. JJCJVDE20190000793) |

The minor D.R. appeals a dispositional order entered following the juvenile court's sustaining of the allegations in the petition that he had committed burglary in the first degree and grand theft of a firearm.  He complains the juvenile court erred:  (1) in failing to dismiss the grand theft count pursuant to Welfare and Institution Code section 701.1 and (2) in failing to stay the custody time for that count pursuant to Penal Code

1

section 654.[1]  The People argue substantial evidence supports the juvenile court's determination that the minor had committed grand theft of a firearm, but agree the juvenile court should have stayed the custody time on grand theft of a firearm.  For the reasons explained herein, we agree with the People.  Accordingly, we will modify the judgment to stay the custody time for the firearm theft.  The judgment is otherwise affirmed.

## I.  BACKGROUND

On June 21, 2019, the People filed a wardship petition alleging the minor had committed burglary of a residence (Pen. Code, § 459—count 1) and grand theft of a firearm (Pen. Code, § 487, subd. (d)(2)—count 2).  The probation department determined the minor was eligible for deferred entry of judgment, but the minor declined participation in that program, and the matter was set for a contested jurisdictional hearing.

At that hearing, the People presented the testimony of the victims, M.S. and A.A.  M.S. lived next door to the minor, who was friends with her boyfriend A.A.  The minor had been over a couple of times and had a key to their house so that he could feed their dogs when M.S. and A.A. were out of town.  He had performed this task three or four times.  On June 7, 2020, M.S.'s house was broken into sometime between 10:40 a.m. when she left for work and prior to her return home at around 5:00 p.m.

A.A. testified to sharing a home with his girlfriend M.S.  The minor lived next door in a house sharing a fence.  A.A. was pretty close to the minor, who he thought of as a little brother.  A.A. estimated that the minor had been inside his house approximately 50 times and was familiar with it.  A.A. had the minor perform small jobs for him for which he paid him in cash or trade, including a pocket bike and motorcycle.  A.A.

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

2

admitted that sometimes they smoked together. Following this testimony, an attorney was appointed to represent A.A., who thereafter refused to answer any questions concerning what was smoked and whether A.A. had ever paid the minor in drugs.[2]

When A.A. returned home from work at approximately 2:00 p.m. on June 7, he noticed some of his personal items were missing and others had been moved. He was missing watches, cash, cologne, and a .22-caliber revolver.[3] A.A. investigated further and noticed a window with a damaged screen and a hole in the fence that he shared with the minor's home. A.A. reported the break-in to police, telling them he suspected the minor.

A.A. also confronted the minor via text message, asking why he would break into his house when A.A. had security cameras. The minor responded "bare face gang," which A.A. understood to mean that the minor did not care whether he was caught on camera. A.A. offered the minor money to return his property. The minor asked for more money and wanted to keep the gun. Copies of the text message exchange between A.A. and the minor were admitted into evidence as Exhibit 1. Those messages suggested the minor was upset with A.A. because the minor believed he was owed money for work performed for A.A. A.A. admitted that at least once he had not been able to pay the minor for his work, but denied that he currently owed the minor money.

---

[2] The juvenile court overruled the minor's objection that this refusal violated the minor's Sixth Amendment rights.

[3] While A.A. initially admitted this firearm was not registered to him or M.S., and he did not have a serial number or bill of sale for the gun, A.A. refused to answer subsequent questions concerning the registration status of this gun and a shotgun, invoking the Fifth Amendment. M.S. did not claim the firearm in the insurance claim filed following the burglary.

Following the close of the People's case in chief, the court denied the minor's motion to dismiss the grand theft charge pursuant to Penal Code section 1118 and its corollary section 701.1.

The minor then presented the testimony of Allan Betters with the Bay Area Rapid Transit Police Department, who relayed that the minor had been stranded at a Bart station in Antioch at 8:15 a.m. on June 7th. Betters contacted the minor's mother, who came to pick him up, arriving at about 10:30 a.m. The minor's father, D.L., testified that he and his wife picked the minor up from the Bart station just before 11:00 a.m. They went to a Jack in the Box to discuss the minor not coming home the night before and stayed there for about an hour. He then put gas in the car and drove home, arriving about 1:10 p.m. The minor took a shower and then helped his mother with a yard sale on the side of the house.

The minor's mother, V.R., testified confirming they had retrieved the minor from Antioch around 11:00 a.m. on the morning on June 7th. They ate at a fast food restaurant and arrived home after 1:00 p.m. V.R. told the minor to take a shower, and she started preparing for the yard sale. The minor and his friends helped her prepare for at least 20 minutes. V.R. left her house about 1:50 p.m. to go to a spa. The minor had already left with his friends to hang out.

Following the argument of counsel, the court found: (1) A.A. and M.S. were credible witnesses, (2) the minor had a motive and failed to deny he took A.A.'s property during a text message string that made no sense unless the minor took that property, and (3) the minor's alibi did not cover the entire period of opportunity and put him next door to the house that was burglarized during the relevant time period. Accordingly, the juvenile court found beyond a reasonable doubt that the minor had committed first degree burglary, that he had taken A.A.'s firearm, and that the minor was a person defined within section 602.

At the disposition hearing, the juvenile court adjudged the minor a ward of the court, placed him on formal probation under various conditions, and gave him six days in juvenile hall with credit for time served. The court determined the minor's maximum custody time was six years eight months (six years for the burglary and eight months consecutive for the grand theft of a firearm) and denied the minor's motion to stay the eight months under Penal Code section 654. Finally, the court imposed $3,003.27 in victim restitution (§ 730.6, subds. (a)(2)(B), (h)), a $100 restitution fine (§730.6, subd. (b)(1)), and struck the remaining fines and fees. The minor timely appealed.

## II. DISCUSSION

### A. *Grand Theft of a Firearm*

The minor argues the juvenile court abused its discretion in failing to grant the minor's motion to dismiss the grand theft of a firearm count at the close of the People's case in chief. He attacks only the ownership prong of the offense, contending A.A.'s testimony that *his* gun was taken was not credible and that ownership of the gun was not otherwise corroborated. The minor reasons under these circumstances, the juvenile "court's ruling deprived the minor of a fundamentally fair hearing guaranteed by the Due Process Clause of the 14th Amendment to the U.S. Constitution." We disagree.

The denial of a section 701.1[4] motion is reviewed for substantial evidence. (*In re Andre G.* (1989) 210 Cal.App.3d 62, 65.) Because section 701.1 is the juvenile corollary to Penal Code section 1118, we may look to authority analyzing Penal Code section 1118 (*In re Andre G., supra*, at pp. 65-66) and its jury trial corollary Penal Code section 1118.1. (C.f. *People v. Belton* (1979) 23 Cal.3d 516, 520-521 [through the passage of

---

[4] Section 701.1 provides in pertinent part: "the court, on motion of the minor . . . shall order that the petition be dismissed and that the minor be discharged from any detention or restriction therefore ordered, after the presentation of evidence on behalf of the petitioner has been closed, if the court, upon weighing the evidence then before it, finds that the minor is not a person described by Section 601 or 602."

Penal Code sections 1118 and 1118.1, the legislature created a procedural mechanism for defendant's to challenge the sufficiency of evidence presented by the People in their case in chief].)

" ' "The standard applied by a trial court in ruling upon a motion for judgment of acquittal pursuant to [Penal Code] section 1118.1 is the same as the standard applied by an appellate court in reviewing the sufficiency of the evidence to support a conviction, that is, 'whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged.' " [Citation.] "The purpose of a motion under [Penal Code] section 1118.1 is to weed out as soon as possible those few instances in which the prosecution fails to make even a prima facie case." [Citations.] The question "is simply whether the prosecution has presented sufficient evidence to present the matter to the [trier of fact] for its determination." [Citation.] The sufficiency of the evidence is tested at the point the motion is made. [Citations.] The question is one of law, subject to independent review.' " (*People v Maciel* (2013) 57 Cal.4th 482, 522.)

In conducting this task, " 'we review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the [trier of fact] could reasonably have deduced from the evidence. [Citation.] "Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge . . . to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for

6

substantial evidence.  [Citation.]"  [Citation.]  A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the [judge's] verdict.' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

In denying the minor's section 701.1 motion after the close of the People's case in chief, the juvenile court found A.A.'s testimony credible, noting A.A. reported the crime to the police and testified in court.  While acknowledging A.A.'s hesitancy after his realization that he had been testifying concerning an *unregistered* gun, the court noted this did not mean that the gun had not been stolen.  The minor renewed his insufficiency contentions in his closing argument that the victims had no standing to the firearm alleged to have been stolen because it was not registered, the victims did not have a serial number for the gun, nor did they have any other paperwork establishing ownership.  As such, the minor reasoned, the victims may have had possession, but not ownership.

Thereafter, the juvenile court again found A.A. credible, stating "[A.A.] had some rough edges and there was some slightly rough edges to some parts of his testimony, but nothing to cause me to doubt his veracity, or that this burglary occurred, or that he had this property taken as he said."  Accordingly, the juvenile court determined beyond a reasonable doubt that the minor had committed grand theft of a firearm.  Substantial evidence supports both the trial court's denial of the section 701.1 motion and its ultimate determination following the minor's renewed arguments that the minor had committed grand theft of a firearm.  (*People v. Manibusan*, *supra*, 58 Cal.4th at p. 87; *People v Maciel*, *supra*, 57 Cal.4th at p. 522.)

Unlike other types of theft, which may be grand or petit depending on the value of the property taken (see CALCRIM No. 1801), theft of a firearm is by definition grand theft. (Pen. Code, §§ 487, subd. (d)(2), 490.2, subd. (c).)  Accordingly, we find it helpful to look to the elements of theft for guidance concerning the minor's arguments.  "The elements of theft by larceny are well settled:  the offense is committed by every person

who (1) takes possession (2) of personal property (3) owned or possessed by another, (4) by means of trespass and (5) with intent to steal the property, and (6) carries the property away." (*People v. Davis* (1998) 19 Cal.4th 301, 305.)

As explained in the notes following CALCRIM No. 1800 concerning larceny: "The victim of a theft does not have to be the owner of property, only in possession of it. (*People v. Edwards* (1925) 72 Cal.App. 102, 116 [236 P. 944], disapproved on other grounds in *In re Estrada* (1965) 63 Cal.2d 740, 748 [48 Cal.Rptr. 172, 408 P.2d 948].) 'Considered as an element of larceny, "ownership" and "possession" may be regarded as synonymous terms; for one who has the right of possession as against the thief is, so far as the latter is concerned, the owner.' (*Ibid.*; see also *People v. Davis* (1893) 97 Cal. 194, 195 [31 P. 1109] [fact that property in possession of victim sufficient to show ownership].)"

Here, A.A. testified that among the items stolen from his house was a .22-caliber revolver. A.A. had not registered this gun, nor did he have any paperwork or a serial number. However, testimony and text messages between A.A. and the minor showed that the minor was upset that he had not been paid and that he ultimately agreed to return A.A.'s property for money, with the exception of the gun, which the minor said he needed more. The minor has provided no authority establishing that a victim's testimony that his gun was stolen from his home is legally insufficient to establish ownership of that gun for purposes of grand theft of a firearm, nor do we think such a limitation is warranted. Accordingly, the minor has not established juvenile court error.

B.    *Penal Code Section 654*

The minor complains the juvenile court erred when it denied his oral Penal Code section 654 motion to stay the grand theft because both charges were incident to the same intent and objective, to wit, to steal items from A.A.'s house in an attempt to recoup funds from A.A. that the minor felt were owed. The People concur the juvenile court's

8

failure to stay the custody time associated with the grand theft count was error. We agree with the parties.

As the Supreme Court explained in *People v. Harrison* (1989) 48 Cal.3d 321: "It is well settled that [Penal Code] section 654 protects against multiple punishment, not multiple conviction. [Citation.] The statute itself literally applies only where such punishment arises out of multiple statutory violations produced by the 'same act or omission.' [Citation.] However, because the statute is intended to ensure that defendant is punished 'commensurate with his culpability' [citation], its protection has been extended to cases in which there are several offenses committed during 'a course of conduct deemed to be indivisible in time.' [Citation.]

"It is defendant's intent and objective, not the temporal proximity of his offenses, which determine whether the transaction is indivisible. [Citations.] We have traditionally observed that if all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once. [Citation.]

"If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' " (*People v. Harrison*, *supra*, 48 Cal.3d at p. 335.) "A trial court's express or implied determination that two crimes were separate, involving separate objectives, must be upheld on appeal if supported by substantial evidence." (*People v. Brents* (2012) 53 Cal.4th 599, 618.)

Here, the trial court denied the minor's oral Penal Code section 654 motion, finding the two offenses had separate *elements*, and thus, section 654 did not apply. However, here the evidence shows the minor had only one *intent and objective* when he entered A.A.'s home: to steal items contained therein in an ill-advised attempt to recoup

9

the money he believed he was owed. As such, the minor may be punished only once for the burglary (accomplished by entering the home to steal) and the attendant theft of A.A.'s personal property contained therein (including the firearm that he took). (See *People v. McFarland* (1962) 58 Cal.2d 748, 762 [654 applied because the burglary and grand theft "were motivated by one objective, theft"]; *People v. Allen* (1999) 21 Cal.4th 846, 866-867 [defendant may be convicted of both burglary and concealing property taken in that burglary, but the sentence for the latter must be stayed pursuant to Penal Code section 654].) Accordingly, we will modify the judgment to stay the eight months of custody time associated with the grand theft of a firearm count.

## III. DISPOSITION

The judgment is modified to reflect that the eight months associated with grand theft of a firearm is stayed pursuant to Penal Code section 654. The juvenile court shall prepare an amended minute order reflecting the stay of this portion of the minor's available custody time. The judgment is affirmed as modified.

/S/

_____

RENNER, J.

We concur:

/S/

_____

HULL, Acting P. J.

/S/

_____

MAURO, J.

10