Filed 12/12/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>BRANDON LAMAR MARTIN,<br><br>     Defendant and Appellant. | F071654<br><br>(Super. Ct. No. F09905936)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County. Denise Lee Whitehead, Judge.

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Harry Joseph Colombo, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

Brandon Lamar Martin (defendant) appeals from the denial of his petition for resentencing under Penal Code section 1170.18,[1] a statute added by Proposition 47, the Safe Neighborhoods and Schools Act. Defendant asserts his burglary convictions are eligible for resentencing because they would have been convictions for shoplifting, punishable as misdemeanors under section 459.5, another statute added by Proposition 47. We disagree and affirm the judgment of the trial court. Section 459.5's use of the term "larceny" does not include all forms of theft. Defendant's felony conviction for second degree burglary, for entering a commercial establishment and acquiring merchandise by use of a forged check, is not subject to recall of sentence and resentencing under section 1170.18, subdivision (a) or designation as a misdemeanor under section 1170.18, subdivision (f), because his conduct would not have constituted a violation of section 459.5 had that section been in effect at the time of his offense.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 10, 2009, defendant entered a Smart & Final in Clovis, California, and purchased alcohol, candy, toilet paper, and other items. Defendant paid with a check, number 2241, and provided his identification to the cashier. The cashier manually entered the check information into the register and, believing the check was valid, allowed defendant to leave with the goods he had purchased when the transaction was complete. As a result, defendant was sold $192.26 worth of goods.

Defendant later returned to the store and again bought alcohol and snack items. He again paid with a check, number 2242, and provided his identification to the cashier. Defendant's identification matched the information on the check and the clerk accepted the check believing it to be valid. As a result, defendant was sold $306.38 worth of goods.

---

[1] All further references are to the Penal Code unless otherwise noted.

Both checks were tied to the payroll account of a business called The Allergy Center. When the checks cashed, the bookkeeper for the company noticed both that they were out of order and that the company name was not on them. Defendant was not authorized to write checks on behalf of the company and was not known by the bookkeeper.

Defendant was convicted on six counts relating to the two forged checks; two counts of identity theft (§ 530.5, subd. (a)), two counts of second degree commercial burglary (§ 459, subd. (b)), and two counts of check forgery (§ 475, subd. (c)). In bifurcated proceedings, defendant was found to have several prior convictions and to have served several prior prison terms. Defendant received a sentence of six years in prison.

On December 15, 2014, defendant filed a petition pursuant to Proposition 47 to have his second degree commercial burglary convictions reduced to misdemeanor violations of section 459.5, and to be resentenced. His petition was later supplemented with additional briefing from counsel. On May 4, 2015, the trial court held a hearing and denied defendant's petition noting that, because defendant was likely out of prison, the petition should be treated as an application for modification. The trial court concluded that, because forgery was "not a theft," defendant had not entered the Smart & Final with the intent to commit theft and was therefore not eligible for relief under Proposition 47.

## STANDARDS OF REVIEW

The record is viewed in the light most favorable to the trial court's ruling with a presumption that the order is correct. (*People v. Johnson* (2016) 1 Cal.App.5th 953, 960.) The court's review of the meaning of a voter initiative is de novo. (*In re J.L.* (2015) 242 Cal.App.4th 1108, 1114.) Factual findings of the trial court are reviewed "for substantial evidence and the application of those facts to the statute de novo." (*People v. Johnson*, *supra*, at p. 960.)

3.

# DISCUSSION

" 'On November 4, 2014, the voters enacted Proposition 47, the Safe Neighborhoods and Schools Act . . . .' [Citation.] 'Proposition 47 makes certain drug- and theft-related offenses misdemeanors, unless the offenses were committed by certain ineligible defendants. These offenses had previously been designated as either felonies or wobblers (crimes that can be punished as either felonies or misdemeanors).' [Citation.]" (*People v. Morales* (2016) 63 Cal.4th 399, 404.)

Proposition 47 also created a new resentencing provision, to wit, section 1170.18. Under that statute, "[a] person currently serving a sentence for a conviction . . . of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section ('this act') had this act been in effect at the time of the offense may petition for a recall of sentence . . . to request resentencing in accordance with . . . [s]ection 459.5 . . . ." (*Id*., subd. (a).) If, on the other hand, "[a] person . . . [had] completed his or her sentence for a conviction, . . . of a felony or felonies who would have been guilty of a misdemeanor under this act had this act been in effect at the time of the offense, may file an application . . . to have the felony conviction or convictions designated as misdemeanors." (*Id*., subd. (f).)

Section 459.5, a statute added by Proposition 47, created a new crime of shoplifting, a misdemeanor offense that punishes certain conduct that previously would have qualified as a burglary. Now codified, section 459.5, subdivision (a) provides in relevant part: "Notwithstanding Section 459 [(the burglary statute)], shoplifting is defined as entering a commercial establishment with intent to commit larceny while that establishment is open during regular business hours, where the value of the property that is taken or intended to be taken does not exceed nine hundred fifty dollars ($950). Any other entry into a commercial establishment with intent to commit larceny is burglary. Shoplifting shall be punished as a misdemeanor . . . ."

4.

Defendant asserts he "entered Smart [&] Final with the intent to commit theft." He argues the information charged him with unlawfully entering the store " 'with the intent to commit larceny or any felony,' " and theft by larceny is what he did. The fact he obtained the merchandise by forgery does not change the analysis as "forgery was only the means utilized" to obtain the merchandise.[2] He contends Proposition 47's limitation on relief for those convicted of forgery and of identity theft, means the voters did not intend to limit relief for those convicted of second degree commercial burglary. The statute, he asserts, requires a liberal construction.

The People argue defendant entered the commercial establishment with the intent to commit forgery, not larceny, and intent to commit larceny is distinct from intent to commit forgery. Forgery, they argue, is " 'the act of signing the name of another with intent to defraud and without authority, or of falsely making a document, or of uttering the document with intent to defraud.' " They assert forgery does not require asportation of property, whereas larceny requires trespassory taking and the carrying away of property without the owner's consent. They argue there is no evidence the voters intended to grant Proposition 47 relief to all defendants convicted of second degree commercial burglary.

Section 459.5, subdivision (b) provides: "Any act of shoplifting as defined in subdivision (a) shall be charged as shoplifting. No person who is charged with shoplifting may also be charged with burglary or theft of the same property." Thus, in the typical case, if the conduct leading to a defendant's burglary conviction would qualify as "shoplifting" under Proposition 47, he or she would have been charged with a

---

[2] A conviction for burglary may also be affected if the crime was committed with the intent to commit a felony other than larceny and that felony has been retroactively reclassified as a misdemeanor. Defendant concedes that issue is not before us. He was convicted of forgery, but he was also convicted of identity theft. His forgery convictions are, therefore, ineligible for reduction to misdemeanors under Proposition 47. (§ 473, subd. (b).)

misdemeanor had section 459.5 been in place at the time, instead of being charged with burglary. Indeed, one guilty of shoplifting could not have been charged with burglary at all.

This leads to the question before us: had section 459.5 been in effect at the time of defendant's offense, could defendant have been charged with burglary, or was his conduct, instead, an act of shoplifting within the meaning of section 459.5, subdivision (a)?[3] To determine whether defendant's offenses constitute "[entry into] a commercial establishment with intent to commit larceny" (§ 459.5, subd. (a)), we must determine the meaning of larceny in Proposition 47's newly defined crime of shoplifting.

## Larceny

a. *Historical Definition.*

When interpreting the meaning of laws passed by voter initiative, the court's analysis is governed by the voters' intent. (*People v. Park* (2013) 56 Cal.4th 782, 796 (*Park*); *People v. Jones* (1993) 5 Cal.4th 1142, 1146.) However, the court submits to that intent through application of the well-settled principles of statutory construction applied to legislatively enacted statutes. (*People v. Arroyo* (2016) 62 Cal.4th 589, 593; *Park*, *supra*, at p. 796.) "We therefore first look to 'the language of the statute, affording the words their ordinary and usual meaning and viewing them in their statutory context.' " (*Park*, *supra*, at p. 796.) This requires looking both at the historical meaning of larceny and at its use in the statute defining the crime of shoplifting.[4]

Historically, "[l]arceny 'is committed by every person who (1) takes possession (2) of personal property (3) owned or possessed by another, (4) by means of trespass and (5) with intent to steal the property, and (6) carries the property away.' [Citation.]"

---

**3** There is no dispute in this case regarding the value of the property sold to defendant. Each sale did not exceed nine hundred fifty dollars ($950).

**4** We consider the definition within the context of Proposition 47 in our discussion of voter intent, *post*.

6.

(*People v. Vidana* (2016) 1 Cal.5th 632, 639 (*Vidana*).) It is statutorily defined in California as "the felonious stealing, taking, carrying, leading, or driving away of the personal property of another." (*People v. Williams* (2013) 57 Cal.4th 776, 781-782 (*Williams*); accord, § 484, subd. (a).) That statutory definition "reflects its English common law roots." (*Williams*, *supra*, at p. 782.)[5]

Taken at face value, then, the crime of shoplifting is committed by one who: (1) enters a commercial establishment; (2) with the intent to (a) take possession; (b) of personal property; (c) owned or possessed by another; (d) by means of trespass; (e) steal the property; and (f) carry it away; (3) while that establishment is open during regular business hours; and (4) where the value of the property that is taken or intended to be taken does not exceed $950.

From an historical perspective, this direct application of the definition of larceny is generally consistent with how legal dictionaries define "shoplifting" and with how California courts have colloquially referenced the concept of shoplifting in various contexts.[6] For example, Black's Law Dictionary defines shoplifting as the "[t]heft of

---

[5] Theft, on the other hand, is a broader term. It covers different types of taking including larceny, embezzlement, and theft by false pretenses. (*Vidana*, *supra*, 1 Cal.5th at p. 639.)

[6] As will be discussed *post*, it is important to note that there is one substantial difference. Historical references treat the crime of shoplifting as a theft offense, which is consistent with other state's statutory definitions and schemes. (See e.g., N.M. Stat. Ann. § 30-16-20 (LexisNexis 2016) [defining shoplifting as taking or concealing merchandise with the intention of converting it without paying for it or altering the price tag or container in order to deprive the merchant of all or some part of the value of the merchandise]; Nev. Rev. Stat. Ann. § 597.850 (LexisNexis 2015) ["A merchant is presumed to have reason to believe that merchandise has been wrongfully taken by a person and that the merchant can recover the merchandise by taking the person into custody and detaining the person if the merchant observed the person concealing merchandise while on the premises."]; Or. Rev. Stat. Ann. § 30.875 (LexisNexis 2016) ["An adult . . . who takes possession of any merchandise displayed or offered for sale by any mercantile establishment . . . without the consent of the owner and with the intention of converting such merchandise . . . to the individual's own use without having paid the

merchandise from a store or business; specif., larceny of goods from a store or other commercial establishment by willfully taking and concealing the merchandise with the intention of converting the goods to one's personal use without paying the purchase price." (Black's Law Dict. (9th ed. 2009) p. 1504.) Likewise, numerous California cases arising before the changes enacted by Proposition 47 describe shoplifting as a minor crime involving facts consistent with historical larceny.[7] (See, e.g., *People v. Lawrence* (2000) 24 Cal.4th 219, 223-224, 233 [claiming the defendant's "initial crime was the shoplifting theft of a bottle of brandy from a market" where the defendant was seen leaving the store through a closed check-stand with the brandy partially secreted under his jacket]; *Fletcher v. Commission on Judicial Performance* (1998) 19 Cal.4th 865, 902-903 [in case regarding judicial misconduct, describing charges against a trial court defendant as shoplifting when she hid developed film under a blanket and did not pay for it]; *People v. Davis* (1998) 18 Cal.4th 712, 734 [" 'For example, the shoplifter who surreptitiously enters a store with the intent to steal commits burglary even though his or her clandestine effort to slip merchandise into a jacket does not necessarily threaten anyone's personal safety.' "]; *People v. Ewoldt* (1994) 7 Cal.4th 380, 394, fn. 2 [in the course of an example regarding the admission of prior bad act evidence, describing shoplifting as a defendant leaving the store without paying for an item]; see also *Ewing v.*

---

purchase price thereof . . . ."]; see also Ariz. Rev. Stat. § 13-1805 (LexisNexis 2016) [in addition to provisions similar to New Mexico's statute, defining shoplifting as "[c]harging the purchase price of the goods to a fictitious person or any person without that person's authority"].) The definition of shoplifting under Proposition 47, however, invokes not only the structure and phrasing of California's burglary law but the statute itself. (See §§ 459 ["Every person who enters any [defined structure], with intent to commit grand or petit larceny or any felony is guilty of burglary."]; 459.5 ["Notwithstanding Section 459, shoplifting is defined as entering a commercial establishment with intent to commit larceny . . . ."].)

[7] In their briefing, the parties do not identify any California cases utilizing a broader understanding of shoplifting pre-2014 nor any implying defendant's conduct satisfies the colloquial notion of shoplifting. In our independent research, we have found none.

*California* (2003) 538 U.S. 11, 18, 38-41 (dis. opn. of Breyer, J.) [in case considering California's three strikes law, describing offense of hiding three golf clubs in one's pants as shoplifting]; *Johnson v. Ralphs Grocery Co.* (2012) 204 Cal.App.4th 1097, 1106 [taking firewood without paying for it raises reasonable suspicion of shoplifting]; *Ricki J. v. Superior Court* (2005) 128 Cal.App.4th 783, 787, 792-793 [describing confession to concealing lingerie under one's clothing and leaving without paying for the items as an admission to the allegation of shoplifting]; *Miller v. Superior Court* (2004) 115 Cal.App.4th 216, 223 [describing conduct from prior case, where the defendant walked out of store without paying for items of clothing, as shoplifting]; *Judith P. v. Superior Court* (2002) 102 Cal.App.4th 535, 540 [shoplifting arrest arose from incidents where mother stole items by removing security tags from them].)

Defendant, however, contends larceny, as used in section 459.5, includes the act of paying for goods with a forged check obtained using a stolen identity.

Larceny has historically been differentiated from the similar crime of theft by false pretenses. Indeed, this differentiation is one of the historical difficulties leading to California's current theft statute. (See *Williams*, *supra*, 57 Cal.4th at p. 785 ["For instance, it was difficult at times to determine whether a defendant had acquired title to the property, or merely possession, a distinction separating theft by false pretenses from larceny by trick."].) To commit larceny, one must engage in a trespassory taking, which includes the unwilling transfer of possession of the property, and then carry away the ill-gotten goods. (*Id.* at p. 787.) However, where one falsely convinces another to willingly transfer title to those same goods, the crime committed is not larceny, but theft by false pretenses, and no asportation requirement need be met. (*Ibid.*)

b. *Section 490a.*

The People assert defendant's argument relies on a broader definition of theft, resulting from an application of section 490a to the shoplifting statute.

9.

Section 490a, enacted in 1927, provides: "Wherever any law or statute of this state refers to or mentions larceny, embezzlement, or stealing, said law or statute shall hereafter be read and interpreted as if the word 'theft' were substituted therefor." Defendant notes he did not affirmatively cite section 490a in his briefing, suggesting a consideration of section 490a is not necessary to resolve this dispute. Because the definition of larceny is central to this case, however, we consider the effect, if any, of section 490a on the shoplifting statute.

The statutorily defined crime of theft carries within it multiple historical crimes in addition to larceny, including embezzlement and false pretenses. (*Vidana*, *supra*, 1 Cal.5th at p. 639.) In other words, application of section 490a to the shoplifting statute suggests that "larceny" should be read as "theft" and, therefore, include other theft-related offenses.

Our Supreme Court has recently examined section 490a and rejected such a literal application. (*Vidana*, *supra*, 1 Cal.5th at p. 647.)

In 1927, the California Legislature amended section 484[8] consolidating larceny, embezzlement, and obtaining property under false pretenses into one crime, designated as

---

[8] "In 1927, the section was amended to provide as relevant here: 'Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor, or real or personal property, . . . is guilty of theft.' (Stats. 1927, ch. 619, § 1, p. 1046). This portion of section 484 has remained substantively unchanged." (*Vidana*, *supra*, 1 Cal.5th at p. 640, fn. omitted.) Section 484, subdivision (a) currently provides in relevant part: "Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft."

theft. (*Vidana, supra*, 1 Cal.5th at pp. 640-641.) Our Supreme Court reaffirmed that the consolidated definition of theft enacted in 1927 " 'merely . . . amalgamate[d] the crimes of larceny, embezzlement, false pretenses and kindred offenses under the cognomen of theft' " but did not change any of the elements of these historical crimes. (*Id.* at p. 642.) Thus, as the " 'elements of the several types of theft included within section 484 have not been changed . . . a judgment of conviction of theft, based on a general verdict of guilty, can be sustained only if the evidence discloses the elements of one of the consolidated offenses.' " (*Ibid.*)

Terms such as larceny, embezzlement, and theft by false pretenses continue to have independent meaning in the law. (*Vidana*, *supra*, 1 Cal.5th at p. 644 ["[T]he 1927 amendment to section 484 did not repeal or cross-reference then existing embezzlement and false pretenses statutes. These embezzlement and false pretenses statutory schemes continue to be in effect today."].) Indeed, recognizing these independent meanings, the Legislature has continued to utilize the names of historical theft offenses in more modern statutes. (*Id.* at pp. 645-646 [providing several examples].) The result from the consolidation of historical theft-related offenses and the concomitant enactment of section 490a, is that the use of the word larceny, embezzlement, or the like, can be seen as a way of describing a specific type of conduct that is criminalized by the theft statute – not necessarily as the invocation of each and every type of theft. (*Vidana*, *supra*, at p. 649 ["Nor does the Legislature's continued use of the terms 'larceny' (or 'theft') and 'embezzlement' in various statutes transform larceny and embezzlement into different offenses. Rather, these terms are simply different ways of describing the behavior proscribed by those statutes."].)

Our Supreme Court recognized, "literal application of section 490a would render many statutes nonsensical." (*Vidana*, *supra*, 1 Cal.5th at p. 647.) "Although [the Supreme Court] long ago said that 'the essence of section 490a is simply to effect a change in nomenclature without disturbing the substance of any law' [citations], it does

11.

not appear [the Court has] ever applied section 490a to effect a change in nomenclature or to change the language of any statute." (*Ibid*., fn. omitted.) We see no reason to do so here.

The long-defined, but narrow, subset of the crime of theft, "larceny," was specifically included in the definition of shoplifting. To read or interpret section 459.5 as if the word "theft" were substituted for the word "larceny" would be utilizing section 490a, designed " 'simply to effect a change in nomenclature without disturbing the substance of any law' " (*Vidana, supra*, 1 Cal.5th at p. 647), to change the language of a statute and broaden the historical definition of larceny to include all forms of theft. However, because the intent of the electorate is paramount, we must further consider whether the electorate intended a broader meaning for larceny.

c. *Section 459.5 and voter intent.*

When interpreting a voter initiative, we may " ' " 'refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet.' " ' " (*People v. Arroyo*, *supra*, 62 Cal.4th at p. 593.) Ultimately, " '[w]e may not properly interpret the measure in a way that the electorate did not contemplate: the voters should get what they enacted, not more and not less.' " (*Park, supra*, 56 Cal.4th at p. 796.) In this process the court presumes the electorate is " 'aware of existing laws and judicial constructions in effect at the time legislation is enacted' [citation], 'and to have enacted or amended a statute in light thereof.' " (*People v. Superior Court* (*Cervantes*) (2014) 225 Cal.App.4th 1007, 1015, see *People v. Licas* (2007) 41 Cal.4th 362, 367.) " ' "Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different intention existed." ' " (*People v. Licas*, *supra*, at p. 367.)

While there is little discussion of shoplifting in the analyses and arguments contained in the voter information guide, what is there supports the conclusion that

12.

obtaining merchandise by use of a forged check does not constitute larceny as that term is used in section 459.5.

The analysis by the Legislative Analyst provides a summary of the "**Proposal**" made by Proposition 47. (See Voter Information Guide, Gen. Elec. (Nov. 4, 2014), analysis of Prop. 47 by Legis. Analyst, pp. 35-36.) This proposal identifies several specific crimes, their existing penalties, and describes how Proposition 47 would change the punishment for each specific crime. As the analysis explains, "the measure reduces the penalties for the following crimes: [¶] . . . [¶] . . . *Shoplifting.* Under current law, shoplifting property worth $950 or less (a type of petty theft) is often a misdemeanor. However, such crimes can also be charged as burglary, which is a wobbler. Under this measure, shoplifting property worth $950 or less would always be a misdemeanor and could not be charged as burglary." (Voter Information Guide, Gen. Elec., *supra*, analysis of Prop. 47 by Legis. Analyst, p. 35.)

This explanation does several things to support the conclusion that the electorate intended not only a narrow definition of larceny in the proposed shoplifting statute, but also the use of the historical definition of larceny. First, the analysis specifically describes shoplifting as "a type of petty theft." (Voter Information Guide, Gen. Elec., *supra*, analysis of Prop. 47 by Legis. Analyst, p. 35.) This description not only associates shoplifting with a specific type of crime, petty theft, but further identifies shoplifting as only a subset of that crime. At a minimum, then, the voters would expect shoplifting to be narrower than petty theft if relying on this description. Second, the analysis differentiates shoplifting from burglary, explaining that shoplifting is sometimes charged as burglary, as opposed to the petty theft of which it is a subset, and explicitly preventing that future practice. (*Ibid*.) Thus, voters relying on these statements would expect that shoplifting would be treated differently from burglary if Proposition 47 is passed. Finally, the analysis treats shoplifting as an existing crime, listing it with other known crimes which already have statutory definitions such as grand theft, receiving stolen

13.

property, writing bad checks, forgery, and drug possession, while consistently using language suggesting individuals are regularly incarcerated for committing such crimes. (Voter Information Guide, Gen. Elec., *supra*, analysis of Prop. 47 by Legis. Analyst, pp. 35-36 ["the measure reduces the penalties for the following crimes"; "about 40,000 offenders annually are convicted of the above crimes"; "the above crimes are nonserious and nonviolent, most offenders are currently being handled at the county level"].) As such, one reading the analysis would conclude that the crime of shoplifting already exists and, knowledgeable about the general description of the crime in California case law to that point (*People v. Superior Court (Cervantes)*, *supra*, 225 Cal.App.4th at p. 1015), would likely understand the crime to be limited in line with the historical definition of larceny.

The text of Proposition 47 also slightly supports this conclusion. While the summary statements ahead of Proposition 47's text only vaguely define the specific scope of the proposition with respect to modifications to the criminal law, it does include some limiting language. The "Findings and Declarations" provides that the law will be enacted "to maximize alternatives for nonserious, nonviolent crime" and the "Purpose and Intent" of the law is to "[r]equire misdemeanors instead of felonies for nonserious, nonviolent crimes like petty theft and drug possession." (Voter Information Guide, Gen. Elec., *supra*, text of Prop. 47, §§ 2, 3, subd. (3), p. 70.) By identifying as nonserious crimes only petty theft and drug possession, the same type of crimes actually modified by the amendments to the Penal and Health and Safety Codes in the proposed text of Proposition 47, the voter information guide demonstrates an intent by the electorate to limit the effects of the law to changing just those types of crimes. As a result, the available evidence does show an intent by voters to limit the scope of shoplifting to larceny, which is a subset of petty theft.

It is true the definition of shoplifting under Proposition 47 invokes the structure and phrasing of California's burglary statute. (See §§ 459, 459.5.) We do not conclude

14.

from this, however, that the term larceny in section 459.5 should be understood more broadly than its historical definition. While the language and placement of the new shoplifting offense is facially subject to such an interpretation, adopting such an interpretation runs contrary not only to the language choices within the statutory scheme of Proposition 47, but also to the expressed intent of the voters to differentiate shoplifting from burglary.

Starting first with the statutory scheme of Proposition 47, a rote application of the broader term of theft to the text of the shoplifting statute assumes that the electorate was either unable to or did not desire to distinguish between larceny and other forms of theft when enacting the new and amended laws. But this notion is undermined by the language choices made within Proposition 47. In the shoplifting statute, "larceny" is differentiated from "theft." The statute uses larceny in the definition of shoplifting, but protects shoplifters from discretionary charging choices by adding that no person "charged with shoplifting may also be charged with burglary or theft of the same property." (§ 459.5, subd. (b).) This choice of wording within the statute at issue confirms the electorate thought larceny was something different than other forms of theft. There would be no rational purpose for choosing different words to convey the same meaning if larceny and other forms of theft were intended to be wholly overlapping terms. (See *Kleffman v. Vonage Holdings Corp.* (2010) 49 Cal.4th 334, 343 [rejecting argument which "contravenes the principle that 'when different words are used in contemporaneously enacted, adjoining subdivisions of a statute, the inference is compelling that a difference in meaning was intended' "].) In addition, at least one other modification to the Penal Code brought by Proposition 47 identified theft generally as opposed to larceny specifically. (§ 490.2, subd. (a) ["obtaining any property by theft where the value of the money, labor, real or personal property taken does not exceed nine hundred fifty dollars ($950) shall be considered petty theft"].) Within the overall scheme

15.

of Proposition 47, then, it appears the electorate intended to differentiate larceny from theft.

Section 459.5's placement following the offense of burglary in the broader Penal Code does not meaningfully rebut this conclusion. As discussed *ante*, the intent of the electorate to differentiate shoplifting from burglary is demonstrated both through the express association of shoplifting with a subset of the crime of petty theft and through the explicit goal of preventing conduct which could be charged as shoplifting from continuing to be charged as burglary. The decision to frame the crime of shoplifting in the general form of the burglary statute is consistent with the stated intent to differentiate the offense in such a way that a burglary charge could no longer be utilized for low value larcenies, while ensuring only that a specific subset of crimes would be eliminated from the burglary statute. This goal is supported not only by the language previously discussed, but also by the express authority to continue charging burglary with respect to high value larcenies, which fall outside the definition of shoplifting. (See § 459.5, subd. (a) ["Any other entry into a commercial establishment with intent to commit larceny is burglary."].)

Even if there was some greater reason to associate the crime of shoplifting with the crime of burglary, as opposed to petty theft, there would be scant authority to expand the meaning of larceny.

The burglary statute has used the term larceny since at least 1892. (See *People v. Barry* (1892) 94 Cal. 481, 482 ["Viewed in the light of section 459 . . . , which says: 'Every person who enters any house, room, store, . . . with intent to commit grand or petit larceny, or any felony, is guilty of burglary,' — the ruling of the court is correct."] italics omitted.) Thus, regardless of the soundness of the conclusion, it is, at least as an initial matter, reasonable to consider whether the Legislature in 1927 considered the impact of section 490a on the burglary statute and proceeded despite the potential broadening of that statute. (See *People v. Nguyen* (1995) 40 Cal.App.4th 28, 31; compare *People v.*

16.

*Myers* (1929) 206 Cal. 480, 485 [finding that nomenclature change effected by § 490a did not disturb the substance of any law, making it "unimportant to dwell upon the contention that this section is ineffectual to interpret the word 'larceny' to mean 'theft' in section 459"] with *People v. Parson* (2008) 44 Cal.4th 332, 354 ["An intent to commit theft by a false pretense or a false promise without the intent to perform will support a burglary conviction."].)

However, no historical similarities can be found here, where the electorate chose to enact a statute utilizing the term "larceny," despite later referring to related conduct as "theft," knowing both that the word larceny retained its historical elements and that the definition of theft and the application of section 490a effected a simple change in nomenclature which did not " 'wipe out the common-law definition of larceny, nor . . . destroy the universal meaning of the word wherever English is spoken' " (*People v. Myers*, *supra*, 206 Cal. at p. 485). (See *Williams*, *supra*, 57 Cal.4th at p. 789.)

For his part, defendant argues the overall statutory scheme of Proposition 47 shows the electorate did not intend to limit the underlying crimes for which resentencing on a second degree commercial burglary conviction would be appropriate. Pointing to the fact that Proposition 47 bars one who has been convicted of both forgery and identity theft from having their forgery conviction considered a misdemeanor even where the value of the forgery was below $950, defendant contends that the lack of a similar limitation on charges related to shoplifting offenses demonstrates a clear intent not to limit which offenses are eligible to qualify as a shoplifting offense. We disagree. The limitations added to the forgery statute serve to differentiate minor offenses of forgery, where a misdemeanor conviction has been deemed appropriate, from crimes such as identity theft, where the electorate has chosen to ensure that greater punishments remain available. That such a provision was added does not detract from the ability of the electorate to similarly limit the scope of relief available by utilizing specific words in a statute rather than unique clauses. Here, the evidence is persuasive that the electorate's

17.

choice of the word "larceny" was an inherently limiting phrase to the meaning of the crime. Once utilized, there was no reason to additionally limit the scope of the offense. In contrast, no similarly limiting word could be used to differentiate forgery without the use of identity theft, from forgery involving the use of identity theft. As such, it was reasonable for the electorate to approve of additional limiting language and the decision to do so bears no relationship to the definition of larceny in the shoplifting statute.

Given the broader support for the conclusion that larceny, as used in the shoplifting statute, should be understood to encompass its historical definition, neither inclusion of the shoplifting statute in the burglary section of the Penal Code, nor the general similarities between the language used to define the crime and the offense of burglary, nor the existence of limiting factors with respect to the crime of forgery are compelling evidence that the word larceny should be understood to mean theft generally. As such, the proper interpretation of larceny as used in the shoplifting statute is the historical definition of the crime.

### *Defendant Did Not Commit the Crime of Shoplifting*

In this case, defendant's use of a forged check caused Smart & Final to willingly transfer title to certain goods to defendant. Because Smart & Final intended to pass title to the goods through the sale, defendant's crime satisfies the elements of theft by false pretenses, not larceny or larceny by trick. (See *Williams*, *supra*, 57 Cal.4th at p. 788 ["Here too defendant did not commit larceny. Walmart, through its store employees, consented to transferring title to the gift cards to defendant. Defendant acquired ownership of the gift cards through his false representation, on which Walmart relied, that he was using valid payment cards to purchase the gift cards."]; *People v. Nor Woods* (1951) 37 Cal.2d 584, 586 [if the victim intended that only possession of the property should pass at the time of the sale, the defendant was guilty of larceny by trick or device, but if the victim intended that title should pass, the defendant was guilty of obtaining property by false pretenses]; *People v. Edwards* (1925) 72 Cal.App. 102, 113 ["It is

18.

essential in such cases that the owner shall intend to part with the possession only, and not to pass the title as well. If he intends to pass both the possession and the title, the transaction, though it may amount to the crime of obtaining property by false pretenses, will not constitute larceny."], disapproved on other grounds by *In re Estrada* (1965) 63 Cal.2d 740, 748.) None of the facts supporting defendant's crimes show an intent to commit larceny, as opposed to theft by false pretenses.

Defendant argues in reply that consent obtained by fraud is ineffective and thus his taking should be considered trespassory. Defendant's argument misses the common law distinction between theft by false pretenses and larceny by trick. It is not the fraudulent consent that matters in this analysis, but what conduct was fraudulently induced. Where only a transfer of possession is fraudulently induced, the fraud does, indeed, invalidate the voluntary transfer of possession and one remains guilty of larceny (albeit by trick or device) if one obtains the property with the intent to convert it to their own purposes. (See *People v. Edwards*, *supra*, 72 Cal.App. at p. 113 ["It is well settled that a taking, within the definition of larceny, occurs when a person, with a preconceived design to appropriate the property to his own use, obtains possession of it by means of fraud or trickery. In such case the fraud vitiates the transaction, and the owner is deemed still to retain a constructive possession of the property."].) However, where the fraud effectuates a transfer of title, the cases cited in the above paragraph show it is not larceny but theft by false pretenses that has occurred under the common law. (*Ibid.*)

Nor, contrary to defendant's argument, is the ultimate desire to obtain and leave with goods a defining fact in the analysis. Rather, as implied above, the question that must be answered is how the victim, Smart & Final, viewed the transaction. With no advance knowledge of defendant's plans shown in the record, the facts support only one conclusion: Smart & Final intended to pass title to defendant when he appeared to pay for the goods he desired. That this intent was fraudulently induced means defendant

19.

intended to commit the historical common law crime of theft by false pretenses and not a form of larceny.[9]

Since no facts show defendant intended to commit a larceny upon entering the store,[10] his conduct cannot qualify as shoplifting under Proposition 47.  Given that defendant did not commit the offense of shoplifting, the prosecutor would have been free to charge him with burglary, the felony for which he was convicted, even if Proposition 47 had been in effect at the time defendant committed his crimes.  Defendant is therefore ineligible for resentencing under Proposition 47.

## DISPOSITION

The judgment is affirmed.

_____
DETJEN, J.

WE CONCUR:


_____
HILL, P.J.


_____
PEÑA, J.

---

[9]     There appear to be no facts in the record which would suggest defendant's commission of identity theft through the same transactions evidences an intent to commit larceny as opposed to theft by false pretenses.  Defendant has not argued a separate intent arose from this act.

[10]     Because the record supports the conclusion that defendant intended to commit theft by false pretenses and not larceny, we need not reach defendant's argument that the People bear the burden of proof on eligibility issues.  (But see *People v. Sherow* (2015) 239 Cal.App.4th 875, 879-880 [concluding burden of proof is on petitioner].)

20.