Filed 11/20/25  In re Ashton C. CA4/2
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re Ashton C., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E079831 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ2000558) |
| v. | OPINION |
| S.R. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County.  Dorothy McLaughlin, Judge.  Affirmed.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant S.R.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant R.C.

Minh C. Tran, County Counsel, Teresa K.B. Beecham, and Julie K. Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

S.R. (Mother) and R.C. (Father) appeal from the juvenile court's order terminating their parental rights to their son, Ashton C. Both parents argue that the order must be conditionally reversed because the Riverside County Department of Public Social Services (DPSS) violated its duty under California law to ask extended family members about whether Ashton might be an Indian child within the meaning of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.).[1] In a prior opinion, we affirmed on the ground that the duty to inquire of extended family members did not apply, because Ashton was not taken into temporary custody under Welfare and Institutions Code section 306—he was taken into custody pursuant to a protective custody warrant under section 340. (Unlabeled statutory citations refer to the Welfare and Institutions Code.) The Supreme Court granted review and subsequently transferred the case back to this court with directions to vacate our prior opinion and reconsider the appeal in light of *In re Ja.O.* (2025) 18 Cal.5th 271 (*Ja.O.*). Having complied with the Supreme Court's directions and given the parties the opportunity to file supplemental briefs, we affirm.

---

[1] Because ICWA uses the term "Indian," we use it as well "to reflect the statutory language." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125, fn. 1 (*Dezi C.*).) No disrespect is intended.

BACKGROUND

Mother's parental rights to two previous children were terminated in 2013. Mother tested positive for opiates and methamphetamine when she gave birth to Ashton in September 2020.

On September 14, 2020, DPSS applied for a protective custody warrant as to Ashton. On the same day, the superior court issued the warrant, and the child was taken into protective custody. On September 16, 2020, DPSS filed a petition as to Ashton under section 300. The Judicial Council Indian Child Inquiry Attachment form (ICWA-010(A)) attached to the petition states that the social worker inquired about Indian ancestry and that the child has no known Indian ancestry.

Both parents were present at the detention hearing on September 17, 2020. Counsel for both parents confirmed orally on the record that the parents have no Indian ancestry. The court then inquired of each parent, and both parents confirmed orally on the record that they have no Indian ancestry. Mother also filed a Parental Notification of Indian Status form (ICWA-020), stating under penalty of perjury that none of the options on the form (which indicate the child may be an Indian child) applied.

The court found that DPSS had conducted a sufficient inquiry regarding whether Ashton may have Indian ancestry, and the court found that ICWA does not apply. The court found Father to be Ashton's presumed father and detained Ashton from both parents.

3

The jurisdiction/disposition report states that on October 5, 2020, the paternal grandmother "denied she or her family had Native American ancestry." The report also states that DPSS repeatedly tried to interview the parents concerning Native American ancestry but was unable to contact them. DPSS mailed relative placement letters to the paternal great-uncle and the paternal aunt, but there is no evidence that the agency attempted to ask those relatives about Indian ancestry. The paternal grandmother, who lived in Kansas, wanted to be assessed for placement. She and "her husband" had a visit with Ashton while they were visiting California.

At the jurisdiction and disposition hearing on October 30, 2020, the court again found that DPSS had made a sufficient inquiry regarding Indian ancestry and again found that ICWA does not apply. The court found true the allegations of the first amended petition (which was filed the same day as the hearing), removed Ashton from parental custody, and ordered reunification services for both parents.

The status review report for the six-month review hearing states that on January 4, 2021, the social worker asked both parents "about Native American ancestry and tribal affiliations," and both parents again said they had none. The paternal grandmother indicated that she was no longer interested in placement. She and her husband thought that Ashton was placed in a good home, and "she acknowledged her age."

At the six-month review hearing on April 14, 2021, the court found that ICWA does not apply, DPSS had made sufficient inquiry, and no new information indicated that

4

ICWA may apply. The court further found that (1) the parents had not participated regularly and made substantive progress in their services, (2) the parents had made no progress in addressing the issues that led to Ashton's removal, and (3) there was no substantial probability that Ashton might be returned to parental custody within another six months. The court accordingly terminated reunification services for both parents and set a selection and implementation hearing under section 366.26.

The report for the section 366.26 hearing states that on July 26, 2021, the paternal grandmother denied any Native American ancestry or tribal affiliation. The report also states that the parents did not request any visitation with Ashton during the reporting period and that the social worker attempted to contact the parents about visitation but was unable to reach them.

At the selection and implementation hearing on September 19, 2022, the court terminated the parental rights of both parents as to Ashton. Although the court did not make an express ICWA finding at the section 366.26 hearing, the order terminating parental rights "was 'necessarily premised on a current finding by the juvenile court'" that ICWA did not apply to Ashton. (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 740, disapproved on another ground by *Dezi C.*, *supra*, 16 Cal.5th at p. 1152, fn. 18.) Both parents timely appealed.

DISCUSSION

Both parents argue that DPSS and the juvenile court did not conduct an adequate initial inquiry to determine whether Ashton is an Indian child within the meaning of ICWA, because DPSS did not ask various extended family members whether they had any Indian ancestry. In response, DPSS acknowledges that it had a duty to inquire of extended family members under section 224.2, subdivision (b). (*Ja.O.*, *supra*, 18 Cal.5th at pp. 278-279.) But DPSS argues that the court nevertheless did not abuse its discretion by implicitly finding that the agency conducted an adequate and proper ICWA inquiry. We agree with DPSS.

To be an Indian child within the meaning of ICWA, a child must be either (1) a member or citizen of a federally recognized Indian tribe, or (2) eligible for membership or citizenship in such a tribe and the biological child of a member or citizen. (25 U.S.C. § 1903(4), (8); § 224.1, subds. (a)(4), (b)(1); *In re Jonathon S.* (2005) 129 Cal.App.4th 334, 338.) The child welfare department and the juvenile court have an "affirmative and continuing duty to inquire" whether a child in a dependency proceeding "is or may be an Indian child." (§ 224.2, subd. (a).)[2] "The duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry." (*In re Ricky R.* (2022) 82

---

[2]  After we filed our previous opinion in this case, the Legislature enacted Assembly Bill No. 81 (2023-2024 Reg. Sess.), which amended section 224.2 effective September 27, 2024. (Stats. 2024, ch. 656, § 3.) We quote that version of the statute because, for purposes of this case, it is not materially distinguishable from prior law as interpreted by *Ja.O.*

Cal.App.5th 671, 678 (*Ricky R.*), disapproved on another ground by *Dezi C., supra*, 16 Cal.5th at p. 1152, fn. 18.)

"The duty of initial inquiry applies in every dependency proceeding." (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 678.) The child welfare department's duty to inquire begins "when first contacted regarding a child." (§ 224.2, subd. (b)(1).) The department must ask the "party reporting child abuse or neglect whether the party has any information that the child may be an Indian child," and the department must also ask the child and the child's family members, including extended family members, upon first contact with those individuals. (*Ibid.*) In addition, if the child is taken into the department's temporary custody under section 306, "or if they were initially taken into protective custody pursuant to a warrant described in Section 340," then the department must ask "the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b)(2).) Extended family members include adults who are the child's stepparents, grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (§ 224.1, subd. (c)(1).)

Although the child welfare department is required to conduct an ICWA inquiry of extended family members, state law "'does not require the agency to "find" unknown relatives and others who have an interest in the child, merely to make reasonable inquiries. The operative concept is those people who are reasonably available to help the

7

agency with its investigation into whether the child has any potential Indian ancestry should be asked.'" (*Dezi C.*, *supra*, 16 Cal.5th at p. 1140.)

Juvenile courts must conduct their own initial inquiry as well. "Federal regulations require state courts to ask each participant 'at the commencement' of a child custody proceeding 'whether the participant knows or has reason to know that the child is an Indian child.'" (*Ricky R.*, *supra*, 82 Cal.App.5th at pp. 678-679, quoting 25 C.F.R. § 23.107(a) (2022).) Similarly, state law requires the court to pursue an ICWA inquiry at the first hearing on a dependency petition (or at the first court appearance of a party or "other interested person[]," if the party or other interested person was not present at the first hearing). (§ 224.2, subd. (c).)

"'[R]eason to believe that an Indian child is involved' triggers the duty of further inquiry. [Citation.] '[R]eason to believe' exists whenever the court or [the child welfare department] has 'information suggesting that either the parent of the child or the child is a member [or citizen,] or may be eligible for membership [or citizenship], in an Indian tribe.'" (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 679, quoting § 224.2, subd. (e), 1st par. & (e)(1).)

The juvenile court may find that ICWA does not apply to the proceedings if it finds "that an agency's inquiry and due diligence were 'proper and adequate,' and the resulting record provided no reason to know the child is an Indian child." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1134.) The "court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Id.* at p. 1141.) "'"On a well-developed

8

record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes.'" [Citations.] [¶] If, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by California law [citation], there is no error and conditional reversal would not be warranted even if the agency did not inquire of everyone who has an interest in the child. On the other hand, if the inquiry is inadequate, conditional reversal [of an order terminating parental rights] is required so the agency can cure the error and thereby safeguard the rights of tribes, parents, and the child." (*Ibid.*)

The parents argue that DPSS had a duty to ask Mother for contact information for maternal relatives so that the agency could ask them about possible Indian ancestry. They contend that in the absence of such a request, DPSS failed to discharge its duty of initial inquiry. The argument lacks merit, because "section 224.2 'does not require the agency to "find" unknown relatives and others who have an interest in the child." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1140.)

The parents also argue that DPSS's initial inquiry was inadequate because the agency failed to ask the paternal great-uncle, the paternal aunt, and the paternal grandfather about possible Indian ancestry. The paternal great-uncle does not qualify as an extended family member under the statutory definition, so we find no error with respect to him. (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1053 [agency did not have a

duty to inquire of great-grandparents because they were not extended family members under ICWA].) The person whom the parents identify as the paternal grandfather is the paternal grandmother's husband, but he does not appear to be biologically related to Father. He and Father do not share a last name (whereas Father and the paternal great-uncle have the same last name). At the detention hearing, Father indicated through counsel that the "only relative" available for placement was the paternal grandmother. The record repeatedly refers to the "paternal grandmother" being assessed for relative placement and only once refers to the "paternal grandparents" when discussing placement. In the respondent's brief, DPSS argues that the paternal grandmother's husband was not a biological relative. The parents do not dispute that or otherwise address the argument in their reply briefs or their supplemental briefs. The paternal grandmother's husband is not an extended family member under the statutory definition, so we find no error with respect to him either. (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1053.)

The paternal aunt does qualify as an extended family member. But Father repeatedly denied any Indian ancestry, and the paternal grandmother likewise denied any Indian ancestry. The record on Father's ancestry is well developed, and reversal is not required merely because "every possible extended family member has not been asked about the child's Indian ancestry." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1140.) Under these circumstances, the court did not abuse its discretion by finding the ICWA investigation adequate and proper.

The parents raise two other arguments, but both of them fail. Father asserts that the lack of inquiry as to certain extended family members also violated DPSS's and the court's "continuing duty to inquire" about the child's Indian status under subdivision (a) of section 224.2. Father does not develop the argument or explain how, under the circumstances of this case, the continuing duty to inquire could have been violated even if the duty of initial inquiry was not. We conclude that there was no such violation. The initial inquiry investigation revealed no evidence of any possibility that Ashton might be an Indian child within the meaning of ICWA. On the basis of that investigation, the court found that ICWA did not apply. Thereafter, neither DPSS nor the court received any new information suggesting that Ashton might be an Indian child, so there was no need to conduct any additional inquiry. We accordingly conclude that DPSS and the court did not violate their continuing duty to inquire.

Finally, Mother argues that DPSS violated its duty to report on its ICWA inquiry efforts, because DPSS "provided no further updates on the ICWA after October 30, 2020, in its Jurisdiction/disposition report." The argument is meritless. DPSS did continue to inquire about ICWA after the jurisdiction and disposition hearing and did report on those efforts, including updates in the status review report for the six-month review hearing and the report for the section 366.26 hearing. Mother has not shown any violation of DPSS's duty to report on its ICWA inquiry efforts.

11

For all of these reasons, we conclude that the juvenile court did not abuse its discretion by implicitly finding that DPSS conducted an adequate and proper ICWA investigation.

DISPOSITION

The order terminating parental rights is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

MILLER
Acting P. J.

CODRINGTON
J.

12